**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**DIRECTV, INC.,**

                     **Plaintiff,**

**-vs-**                                                          **Case No. 6:11-cv-1432-Orl-28KRS**

**JOHN F. STABILE, GERI STABILE,
THE GRILLE AT BELLALAGO, INC.,**

                     **Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION FOR DEFAULT JUDGMENT (Doc. No. 19)**
>
> **FILED:** March 27, 2012

**I. PROCEDURAL BACKGROUND.**

On August 26, 2011, Plaintiff, DIRECTV, Inc. ("DTV"), filed a complaint alleging that Defendants The Grille at Bellalago, Inc. ("The Grille") and John F. Stabile and Geri Stabile individually and as officers, directors, shareholders and/or principals of The Grille violated its rights under the Cable Communications Policy Act of 1984, 47 U.S.C. § 5214 *et seq.*, and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. Doc. No. 1. Count I alleges unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a). Count II alleges intentional inception of electronic communications in violation of 18 U.S.C. § 2511. Count III alleges civil conversion of

DTV's property for Defendants' own commercial use and benefit. Count IV seeks injunctive relief. DTV sought damages, punitive damages and attorneys' fees and costs. *Id.*

On September 20, 2011, DTV successfully served its complaint on Defendants. Doc. Nos. 7, 8, 9. Since then, Defendants have not responded or otherwise appeared in this case. On March 20, 2012, DTV moved for entry of clerk's defaults against all Defendants, which were entered on March 21, 2012. Doc. Nos. 14, 16-18. On March 27, 2012, DTV moved for a final default judgment seeking $4,007.17 in statutory damages under 47 U.S.C. § 605(e)(3)(c)(i)(II), $12,021.51 in enhanced statutory damages under 47 U.S.C. § 605(e)(3)(C)(ii), and $3,413.75 in costs, including attorneys' fees, under 47 U.S.C. § 605(e)(3)(B)(iii). Doc. No. 19.[1]

## II. FACTUAL ALLEGATIONS REGARDING LIABILITY.[2]

DTV is a California corporation that distributes satellite programming throughout the United States. Doc. No. 1 ¶ 5. DTV provides interstate direct broadcast satellite programming to subscribers with specialized satellite receiving equipment. *Id.* Subscribers pay for the programming with a subscription fee and obtain a programming license from DTV. *Id.* DTV holds proprietary rights to the satellite programming it transmits and is the owner and/or lawfully designated distribution agent for such satellite programming. *Id.* To prevent unauthorized entities and persons from viewing its programming, DTV encrypts its satellite transmissions. *Id.* ¶ 15. Upon payment of subscription or

---

[1] Because DTV moved for a default judgment only as to Count I, it has abandoned the other causes of action asserted in the complaint.

[2] I do not include in this section additional facts set forth in DTV's memorandum and evidence in support of its motion for a default judgment because only the facts set forth in the complaint are deemed to be admitted by Defendants.

license fees, DTV authorizes and enables the subscriber to unscramble and receive the satellite programming. *Id.*

DTV charges lower rates for its services to residential customers than for its commercial customers. Doc. No. 1 ¶ 16. The equipment used with DTV residential services can be moved without DTV's knowledge or authorization and commercial entities can surreptitiously access DTV's services without paying the higher commercial rates. *Id.*

On or about October 31, 2010, Defendants did not have a commercial account with DTV. Doc. No. 1 ¶ 17. John Stabile did have a residential account with DTV, with access to NFL Sunday Ticket™ 2010. *Id.* ¶ 18. Defendants advertised for the exhibition of DTV's broadcast in The Grille. Doc. No. 1 ¶¶ 12, 13. On or about October 31, 2010, Defendants displayed National Football League games only available through DTV's NFL Sunday Ticket™ service. The programming was displayed at The Grille without authorization from DTV. *Id.* ¶¶ 19, 20. Defendants' acts were unauthorized, willful and for the purpose of direct or indirect commercial advantage or private financial gain. *Id.* ¶ 20.

DTV was damaged by Defendants' actions because it was denied subscription fees for commercial use of its satellite programming, its sales revenues have been reduced through Defendants' unfair competition and its proprietary rights in the satellite programming have been impaired. Doc. No. 1 ¶ 21.

John and Geri Stabile own and have supervisory capacity and control over the activities at The Grille. Doc. No. 1 ¶¶ 6, 7. The Stabiles received a financial benefit from operation of The Grille and had close control over the internal operating procedures and employment practices of the Grille. *Id.*

¶¶ 8, 9. The Grille is located at 1210 Lago Vista Court, Kissimmee, Florida 34746. *Id.* ¶¶ 10, 11.

**III.    STANDARD OF REVIEW.**

In general, a court may enter a default judgment when the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Thus, "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages. Fed. R. Civ. P. 55(b)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages. *Id*.

**IV.    ANALYSIS.**

    A.    *Liability.*

A default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" itself in a lawsuit. Fed. R. Civ. P. 55(a). Defendants have failed to participate in this case, despite the fact that they were provided with notice

of it on September 20, 2011. Doc. Nos. 7, 8, 9. Therefore, so long as DTV's factual allegations support each element of its claims, a default judgment is appropriate.

Count I of DTV's complaint alleges a violation of 47 U.S.C. § 605(e)(3)(c). Section 605(e)(3) provides a private cause of action for victims of violations of section 605(a). *DIRECTV, Inc. v. Cardona*, 275 F. Supp. 2d 1357, 1361-62 (M.D. Fla. 2003). DTV only seeks a default judgment and damages on this count.

"In order to establish a violation of [47 U.S.C. § 605(a)], Direct Television must demonstrate that [The Grille]: (1) received; (2) an interstate communication; (3) by way of wire or radio; (4) and that he divulged or published such communication; (5) other than through designated or authorized channels; (6) to unauthorized receivers." *DIRECTV, Inc. v. Spokish*, No. 6:03-cv-680-Orl-22DAB, 2004 WL 741369, at *3 (M.D. Fla. Feb. 19, 2004).

The factual allegations of the complaint establish each of these elements. The DTV signal was transmitted to The Grille in Florida from California on or about October 31, 2010. The signal was received by the satellite dish and transmitted to the commercial establishment. This Court has previously held that satellite transmission includes wire transmission. *See DIRECTV, Inc. v. Lewis*, No. 6:04-CV-947-Orl-31KRS, Doc. No. 12 at 5; Doc. No. 13. The Grille intercepted the signal by receiving it without authorization and distributed the signal by divulging or publishing it in a commercial establishment which was not an authorized receiver. Because all of the elements of a violation of § 605(a) have been established, The Grille is liable as to Count I.

DTV asserts that John and Geri Stabile, individually, should be liable as well as The Grille. To hold the Stabiles individually liable under § 605(a), DTV must show that they had "a right and ability to supervise the violations, and that [they] had a strong financial interest in such activities." *J&J Sports Productions, Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) (citations

omitted). In its complaint, DTV alleged that the Stabiles were the owners of The Grille, that they had supervisory capacity and control over the activities within The Grille on October 31, 2010 and that they received a financial benefit from operations at The Grille. Doc. No. 1 ¶¶ 7, 8, 9. Because the Individual Defendants are deemed to have admitted facts in the complaint, John and Geri Stabile are therefore, individually liable.

B. *Damages.*

DTV seeks joint and several liability against all Defendants and seeks damages under 47 U.S.C. § 605(e)(3) totaling $19,442.43. DTV seeks $4,007.17 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); $12,021.51 for willful violation under 47 U.S.C. § 605(e)(3)(c)(ii); and $3,413.75 in attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii).

The statute provides as follows: Upon finding a violation of § 605(a), the Court

(i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of [section 605];

(ii) may award damages as described in subparagraph (C); and

(iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B).

The damages available for a party who is the victim of a violation of § 605(a) are either actual damages suffered as a result of the violation or statutory damages of not less than $1,000 or more than $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i). If the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court may increase the award of damages by an amount of not more than $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(ii).

DTV has established the willfulness of the conduct at issue, that is the unauthorized commercial broadcast of its programming. Because Defendants showed NFL Sunday Ticket™ in a commercial establishment, the use of the programming was done for commercial advantage and financial gain. Accordingly, enhanced damages under § 605(e)(3)(C)(ii) are appropriate. The only question remaining is the amount of damages that should be awarded.

The Court has broad discretion to determine the amount of statutory damages to award. *See DIRECTV v. Brown*, 371 F.3d 814, 818-19 (11th Cir. 2004) (per curiam). Courts have awarded vastly different sums for similar violations based on different approaches to damages. Some courts have awarded the maximum statutory penalty. *See, e.g., Nat'l Satellite Sports, Inc. v. Mosley Entm't, Inc.*, No. 01-CV-74510-DT, 2002 WL 1303039, at *4 (E.D. Mich. May 21, 2002); *Joe Hand Productions, Inc. v. Justice*, No. 1:08-cv-3453-TWT, (N.D. Ga. May 22, 2009), Doc. No. 56 at 32-33. Other courts have decided to award a flat sum for each violation. *See, e.g., Joe Hand Promotions, Inc. v. Chapa*, Civil Action No. H-08-422, 2009 WL 2215124, *3 (S.D. Tex. July 22, 2009) (awarding statutory damages of $10,000.00 and enhanced damages of $50,000.00); *J & J Sports Productions, Inc. v. Rubio*, Civil Action No. H-08-1770, 2008 WL 4360883, *2 (S.D. Tex. Sept. 24, 2008) (awarding statutory damages of $10,000.00 and enhanced damages of $25,000.00). Some courts have awarded actual damages to the plaintiff, and then applied a multiplier to determine the enhanced damages. *See Kingvision Pay-Per-View Corp., LTD.* v. *Wright*, No. 8:06-cv-892-T-30MAP, 2006 WL 4756450, at *3 (M.D. Fla. Oct. 27, 2006) (awarding actual damages of $2,075.00 and enhanced damages of three times actual damages); *Kingvision Pay-Per-View v. Thiaf, Inc.*, No. 1:05-CV-2391-RWS, 2006 WL 2078427, *2 (N.D. Ga. July 24, 2006) (awarding actual damages under § 605 of $1,000 with enhanced damages of five times that amount).

After reviewing the various approaches utilized by courts to determine damages, I find the method and reasoning of the court in *Wright*, to be most applicable here. 2006 WL 4756450 at *3. In that case, the court found that the fee which would have been required to broadcast the event at issue would have been $2,075.00. Thus, the Court awarded damages of $2,075.00 under § 605(e)(3)(C)(i)(II), and enhanced damages of three times that amount, $6,225.00, under § 605(e)(3)(C)(ii).

DTV presented evidence in support of its request for damages. Kent P. Mader, Vice President of Revenue and Margin Assurance for DTV, averred as follows: DTV placed a watermark on the screen during the broadcast of certain programming, including the October 20, 2012, NFL Sunday Ticket™ broadcast. Observation of the watermark by an eyewitness auditor identifies the broadcast as DTV programming. Doc. No. 19-6 ¶ 10. On October 31, 2010, an auditor observed that The Grille was exhibiting three NFL games for public viewing, each of which had the watermark indicating that they were DTV broadcasts. *Id.* ¶ 13; *accord id.* at 13-14. The auditor observed 20 to 22 people in The Grille during the broadcasts. *Id.* at 14. On October 31, 2010, John Stabile had an account for NFL Sunday Ticket™ at a residential rate, and The Grille did not have an commercial account. Doc. No. 19-6 ¶ 16. On December 20, 2010, John Stabile's residential account was disconnected by DTV's Fraud Management Department. *Id.* ¶ 17.

DTV seeks statutory damages in the amount of $4,007.17. Doc. No. 19-6 at 60. DTV calculated damages as the difference between what a commercial account would have been charged for all programming during that time period minus the cost of the residential account for that programming. *Id*. The calculation of this amount is Exhibit G to the motion. This exhibit refers to events that occurred on September 5, 2010, September 25, 2010, October 23, 2010, November 13, 2010, November 20, 2010 and December 11, 2010, none of which were alleged in the complaint.

Because the evidence is insufficient to calculate damages, I recommend that the Court find that the Defendants are liable for violation of 47 U.S.C. § 605(a), and permit DTV to file a separate motion for assessment of damages, fees and costs, or seek an evidentiary hearing on those issues.

## V. RECOMMENDATION.

For the reasons stated above, I respectfully recommend that the Court **GRANT in part** the Motion for Default Judgment (Doc. No. 19) and find that Defendant The Grille at Bellalago, Inc. and Defendants John F. Stabile and Geri Stabile individually and as officers, directors, shareholders and/or principals of The Grille are liable for violation of 47 U.S.C. § 605(a) as alleged in Count I. I further recommend that the Court **DISMISS** Counts II, III and IV without prejudice. Finally, I recommend that the Court **PERMIT** DTV to file a motion for assessment of damages, fees and costs, or a motion requesting an evidentiary hearing on those issues, within the time established by the Court in its Order on this Report and Recommendation.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 3d, 2012.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy